IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| MICHELLE SCHURG and DANIEL SCHURG,<br><br>Plaintiffs,<br>v.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE, UNITED STATES FOREST SERVICE,<br><br>Defendant. | CASE NO.<br><br><br><br>**COMPLAINT** |

COMES NOW the Plaintiffs Michelle Schurg and Daniel Schurg, by and through undersigned counsel and for their Complaint, state as follows:

## I.   PARTIES

1. Michelle Schurg and Daniel Schurg (hereinafter "Plaintiffs") are a married couple and both are a Montana citizens who reside in Florence, Montana. During the time relevant to this Complaint, Plaintiffs resided at and owned a residence at 16252 Folsom Road, within the Macintosh Manor Subdivision, Missoula County, Montana.

2. The United States Department of Agriculture, United States Forest Service (hereinafter "USFS") is headquartered in Washington, D.C. and is an agency of the United States.

3. The USFS's Region 1 – Northern Region is located at 26 Fort Missoula

1

Road, Missoula, Montana 59804 (hereinafter "USFS Region 1"). The USFS Region 1 manages the Lolo National Forest.

## II. VENUE and JURISDICTION

4. Venue is proper pursuant to 28 U.S.C § 1391(e)(1)(B) in the United States District Court for the District of Montana Missoula Division because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

5. In the alternative, Venue is proper pursuant to 28 U.S.C § 1391(e)(1)(B) in the United States District Court for the District of Montana Missoula Division because a substantial part of the property that is the subject of the action is situated in this judicial district.

6. Plaintiffs followed the mandated procedures pursuant to 28 U.S.C § 2675(a) and presented their claims to the USFS. The USFS failed to make a final disposition within six months after Plaintiffs presented their claims. Plaintiffs deem this failure a denial of their claims and accordingly institute this action.

7. This Court has federal question jurisdiction under the Federal Tort Claims Act (hereinafter "FTCA"), specifically, 28 U.S.C. § 2674.

## III. FACTS COMMON TO ALL CLAIMS

8. Plaintiff realleges and incorporates all prior paragraphs as if fully restated in this Claim for Relief.

9. On July 15, 2017, the Lolo Peak Fire (USFS Incident # MT-LNF-001288) (hereinafter Fire) was detected roughly 10.5 miles southwest of Lolo, Montana on the

Lolo National Forest in the South Fork of Lolo Creek drainage. Due to the rugged and heavily timbered landscape, the USFS designated the Fire as a Type 1 incident and appointed an Incident Management Team (IMT) to manage the Fire.

10. On July 21, 2017 and again on July 24, 2017, USFS employee Greg Poncin (hereinafter "Mr. Poncin") accepted Incident Command for the IMT of the Fire. According to Mr. Poncin, he and his IMT developed no overall strategy for attacking the Fire until it reached nearly 200 acres. At that time, Mr. Poncin's IMT commenced locating and constructing fire containment lines and assessing the defensibility of homes and structures along U.S. Highway 12 and U.S. Highway 93near Lolo, Montana.

11. By July 29, 2017, the IMT had assessed the homes and structures in the Macintosh Manor subdivision (including Plaintiffs' home). (attached as Exhibit 1). The USFS assessed structures as one of three different designations: (1) "Defensible, Prep and Hold; (2) "Defensible, Stand Alone," or (3) "Non-Defensible, Prep and Leave." The USFS assessed Plaintiff's home as "Defensible, Stand Alone."

12. The USFS never notified Plaintiffs of their home's designation.

13. If the USFS had informed Plaintiffs that it designated their home "Defensible, Stand Alone," Plaintiffs would have had critical information to make reasoned decisions about how to interact and communicate with the USFS to better understand the USFS's position and the USFS' firing operations' behavior.

14. On August 4, 2017, Noel Livingston (hereinafter "Mr. Livingston")

relieved Mr. Poncin as the Incident Command and established a new IMT to manage the Fire.

15. On August 5, 2017, Mr. Livingston's IMT reviewed the eleven Lolo Peak Fire Management Action Points (MAPs). The IMT reviewed Map #7 that indicated that if fire crossed MAP #7, there would be a high probability of fire advancing toward lower Lolo Creek, Mormon Creek and developed areas south of Lolo, Montana along the west side of Highway 93 south to Carlton Creek, an area that included the Macintosh Manor Subdivision.

16. After Mr. Livingston's IMT meeting on August 5, 2017, the USFS failed to communicate to the Plaintiffs that the Fire may destroy Plaintiffs' property and home.

17. If the USFS had informed Plaintiffs the Fire posed a threat, they could have acted to protect themselves and their property.

18. Subsequent to August 5, 2017, the Fire progressed north and east coming closer to the Mormon Creek drainage, Lolo, Montana, the Macintosh Manor subdivision, and the Plaintiffs' property and home.

19. On August 16, 2017, after the Fire made a significant push east, the USFS convened a meeting with various stakeholders to consider firing operations. Critical fire weather was predicted August 18 and 19, 2017 with winds estimated to reach 30 miles per hour. The USFS and stakeholders determined that igniting fires on the north and east sides of the Fire was the best option, despite concerns of the risks of escape

and availability of resources. The USFS hoped the firing operations would reduce or eliminate fuel sources in front of the Fire to blunt or stop its forward spread.

20. The USFS did not inform Plaintiffs it planned to execute firing operations near their home on August 17, 2017.

21. As part of the firing operations, Missoula County issued an evacuation order at 10:00 PM on August 16, 2017 for an area that included the Macintosh Manor subdivision.

22. This evacuation order was the first time the USFS warned Plaintiffs that the Fire posed a threat to them and their property.

23. The USFS knew the dangers of igniting fires during high winds and planned to begin firing operations as early as possible on August 17, 2017 to allow the ignited fires to back off the ridgetops prior to the incoming winds. However, the Flagstaff Interagency Hotshot Crew did not initiate firing operations until 11:00 AM on August 17, 2017.  Astonishingly, despite the prediction of high winds, firing operations continued with the lighting of fires as late as 2:50 PM in Division Foxtrot, which included the Macintosh Manor subdivision. (Exhibit 2 attached).

24. On August 17, 2017, the USFS did nothing to protect Plaintiff's home and property from destruction by the very fires it intentionally lit.

25. Plaintiffs chose not to evacuate. Instead, they intended to rely on decades of fire training and wild land fire experience to battle the Fire if it approached their property.

26. Around 5:30 PM on August 17, 2017, Plaintiffs drove their ATV to a better vantage point in order to see the Fire's behavior. They spoke with two neighbors and video recorded a USFS plane dropping fire retardant on the Macintosh Manor ridgeline. Some of the retardant landed on Plaintiffs. Plaintiff could hear a fire as it approached the top of the ridge. Plaintiffs had no idea they were observing fires lit by the USFS. The column of smoke increased as it drew nearer. They concluded their reconnaissance and returned home. On their way, they spoke again with the two neighbors and reported that the fire was coming quickly.

27. Around 6:00 PM, a friend of Plaintiffs' named Kevin called and told Plaintiffs that he was at the bottom of the hill with a pump and hose for pumping water from their cistern.

28. Michelle Schurg drove down the hill to retrieve the pump and hose while Daniel Schurg stayed at their residence to load vehicles with valuable possessions and pets. Daniel Schurg also positioned the vehicles in the driveway for a quick escape if needed.

29. Daniel Schurg returned to the north side of his house where he experienced an eerie calm. He watched approximately six "type six" wildland fire engines headed towards the fire.

30. Not more than five minutes later, Daniel Schurg observed the same fire engines retreat down the road. Meanwhile, the faint roar of the fire escalated to a roaring growl as it ignited propane tanks that hissed off gas or exploded.

31. Daniel Schurg could hear a neighbor's house being consumed by the flames.

32. As she drove down the hill, Michelle Schurg observed a line of fire engines at the bottom of Macintosh Manor and a group of fire personnel gathered around a truck looking at a map. Michelle Schurg parked her vehicle and walked over to the group of fire personnel gathered around the truck. Michelle Schurg told the firefighters that her husband had just called her and reported that a wall of flames had crested over the ridge and was moving towards their home, but he had observed fire engines retreating.

33. Michelle Schurg asked the firefighters if they were going to send more fire personnel up the hill to help the Schurgs fight the fire and they responded, "yes, yes we are…we're trying to make a plan." Michelle Schurg and Kevin then loaded the Schurgs' vehicle with the pump and fire hose and headed back up the hill to protect the Shurgs' home.

34. On her way up the hill, Michelle Schurg passed one of her neighbors who was evacuating because her home was surrounded by flames. Michelle Schurg also passed numerous fire trucks and personnel that sat idly watching the fire move through the neighborhood.

35. Upon reaching her home, Michelle Schurg realized immediate action was imperative. A wall of flames was headed down the hill from the north toward her

home and spot fires headed up the hill from the south.

36.   Michelle Shurg and Kevin started setting up the pump and fire hose with the cistern.

37.   Michelle Schurg did not know her husband's location. She grabbed a garden hose and started attacking the fire.

38.   Kevin continued setting up the pump.

39.   From his position, Daniel Schurg watched a wall of flame leap out of the draw north of his home, consuming everything as it descended on him, his wife, and his home.

40.   As trees exploded into flames and grass quickly ignited— fear gripped Daniel Shurg as he realized his predicament and the stakes.

41.   For a grave moment, Daniel Schurg felt utter disbelief and abandonment by the USFS. Then, he snapped back, remembering his training and preparation for this very moment. He could defend himself, his wife and his home.

42.   Daniel Schurg ran towards the back of his home and noticed Kevin, changing the sprinkler to spray water on the Schurgs' propane tank. Kevin said to him, "we can do this" and the two ran around the house to find Michelle Schurg. They found Michelle Schurg pulling fire hose to fight the fire. Kevin started the cistern's pump to charge the fire hose with water.

43.   At that moment, Daniel Schurg noticed two fire engines, firefighters and a truck sitting on the road east and down the hill from him. The crews stood alongside

the vehicles and watched the Schurgs fight to save their home.

44. Daniel Schurg turned his attention to the fire hose that was not charging because it had folded over in the chaos. Without enough water, the fire hose was useless.

45. Seconds were critical as the fire pushed Michelle and Daniel Schurg back towards their home. While Kevin attempted to fix the hose, the fire burned through a 100-foot section of it.

46. Fueled by adrenaline, fear and desperation Michelle Schurg, Daniel Schurg and Kevin struggled to fix the fire hose. They finally unhooked the burned section leaving only 200 feet of usable hose. Losing time, Kevin turned off the pump to relieve the pressure, which removed the kink in the hose.

47. Kevin turned the pump back on and the fire hose finally charged just in time. Daniel Schurg immediately extinguished flames that had charged near and attempted to climb the trees on the south side of his home. After mitigating the flames on that side, Daniel Schurg turned his attention north where the fire was much more aggressive, destructive and intense.

48. Michelle Schurg lost sight of Daniel Schurg in the dense, encompassing smoke.

49. Michelle Schurg feared for her husband's life as her own lungs filled with the fire's smoke and caused her to cough violently.

50. Heavy smoke blanketed Daniel Schurg and obscured his vision.

Disoriented and gasping for clean air, he found a faint glow and recognized the tree. It was the tree closest to his propane tank, completely ablaze.

51. Daniel Schurg attacked these flames with all the water he could deliver. He successfully suppressed the flames and his thoughts turned again to fear, fear for his wife's whereabouts and security.

52. Daniel Schurg fought the encroaching fire as he made his way around the north side of his home. There, Plaintiff saw Kevin using a garden hose to keep the fire from spilling over the pine hedge closest to his home.

53. Kevin's efforts failed as flames lapped up over the hedge and forced Kevin to retreat from the intensity and heat.

54. Daniel Schurg made his way over to Kevin and hit the hedge with water from the fire hose, which knocked it down. Daniel Schurg quickly turned to the trees nearby that posed a threat to his home. He suppressed the fire out of the trees and kept it from getting into the upper canopy and crowning. As he continued to fight the fire, Daniel Schurg made his way towards the propane tank on the west (back) side of his home. He yelled out for his wife as he extinguished the surrounding flames-but she did not answer.

55. Daniel Schurg made his way with the fire hose around the south side of his home again and finally felt a sense of relief. There, on the driveway, stood Michelle Schurg extinguishing flames with a garden hose.

56. Daniel Schurg made one final stand against the fire as he pushed to the

north side of his home, extinguishing the remaining threatening flames. Then, the fire hose collapsed, he had run out of water.

57.     At the same time Michelle Schurg, Daniel Schurg and Kevin fought the fire started by the USFS' firing operations, three fire trucks full of fire personnel lined the road directly below their home. Incredibly, the fire fighters did not raise a finger to help Michelle and Daniel Schurg fight the fire.

58.     Once he ran out of water, Daniel Schurg dropped the fire hose and turned his attention downhill where Michelle Schurg and Kevin fought the fire as it moved towards a neighbor's home.

59.     Daniel Schurg observed in disbelief that the firefighters, fire engines and supervisor truck had not moved and were taking no action to fight the fire. Instead, they looked on as Kevin and Michelle Schurg fought the fire within yards of firefighting personnel. The firefighting crews had no hoses out, no pumps running—they simply watched.

60.     Dismay and anger gripped Daniel Schurg and Michelle Schurg as they walked down the hill towards the fire crews. Daniel Schurg took photos of the fire engines and asked the firefighters why they had not helped the Schurgs fight the fire. The firefighters did not respond. Instead, they entered their fire engines. Michelle Schurg spoke with two of the fire engine bosses. One of the fire engine bosses explained that their objective had been to keep the fire on the upper side of Folsom Road. The fire engine boss did not explain why the crews had sat and watched as the

fire swept through the neighborhood on the lower side of Folsom Road.

61.     Daniel Schurg could not believe it. He needed help and answers, but the USFS remained silent.

62.     Then, Daniel Schurg noticed the structural fire officer standing on the road. Daniel Schurg remembered this officer because Schurg had encountered him only an hour earlier. Daniel Schurg approached the officer to ask why the USFS had not helped the Schurgs fight the fire. The USFS structural fire officer did not answer and just walked away.

63.     Daniel Schurg yelled out as the structural fire officer walked away, "we have finished with the hard work, the least you could do is have them mop up after us." The structural fire officer continued to ignore Daniel Schurg.

64.     Realizing his efforts were futile, Daniel Schurg rejoined Michelle Schurg and Kevin near the Schurg's home. The three of them, alone, mopped up hot spots late into the evening. The fear of flare ups and the ominous sound of structure fires kept the Schurgs awake all night.

65.     After their courageous battle Michelle Schurg and Daniel Schurg discovered burn holes in their deck and realized if they had evacuated, they would have lost their home. Though they saved their home, they were not able to prevent the fires lit by the USFS from severely burning and damaging their property.

### Count 1 – Negligence and Gross Negligence

66.     Plaintiffs reallege and incorporate all prior paragraphs here as if fully

restated in this Claim for Relief.

67. The USFS and its agents did not exercise the level of care that a reasonable and prudent person would under the circumstances. The USFS tracked the Fire's progress and knew the location of Plaintiffs' home. The USFS had a duty to notify Plaintiffs about its defensibility designation of their home, the Fire's potential to reach their home, a timely evacuation warning, and about the USFS's firing operations planned near Plaintiffs' home.

68. The USFS repeatedly told Plaintiffs that their home and personal property were safe and not to worry about the Fire. Plaintiffs relied on the USFS statements and affirmations about their safety. In relying on the USFS' statements and affirmations, Plaintiffs did not have adequate time to fully protect their real or personal property.

69. The USFS failed to notify Plaintiffs about its designation of their home as "Defensible, Stand Alone", the Fire's potential to reach her home, a timely evacuation warning, and about the USFS' planned firing operations near their home.

70. The USFS lit the fires that destroyed Plaintiffs' personal and real property and caused Plaintiffs severe emotional distress. Michelle Schurg coughed for months after fighting the fire due to smoke inhalation. Plaintiffs' home no longer has privacy or a sound barrier.

### Count 2 – Negligent and Intentional Infliction of Emotional Distress

71. Plaintiffs reallege and incorporate all prior paragraphs here as if fully restated in this Claim for Relief.

72. Plaintiffs experienced serious or severe emotional distress that was reasonably foreseeable to the USFS.

73. The USFS's extreme and outrageous conduct intentionally, recklessly and/or negligently caused Plaintiffs' emotional distress and resulting bodily injury.

74. This experience left Michelle Schurg emotional, on edge, sad, angry and in a state of disbelief.

75. Michelle Schurg attempted to return to work after the fire but experienced flashbacks to her experiences during the Fire.

76. Her experiences in fighting the fire caused Michelle Schurg to have negative interactions with her co-workers and supervisor.

77. Realizing that she was not in a good place, Michelle Schurg attended three counseling sessions. Michelle Schurg's counselor indicated she had experienced post-traumatic stress disorder because of the USFS' firing operations.

78. The emotional fallout from the effects of the USFS' firing operations continue to this day for Michelle Schurg.

79. Michelle Schurg now distrusts those who work in the wildland fire field (even though she had worked in the wildland fire field for 26 years). Her former work-related friendships are not the same.

80. Michelle Schurg's painful memories of fighting the fire return to her daily because they occurred right outside the front door of her home. Every time she arrives home, she sees her once vibrant hillside now entirely covered in weeds and invasive

species, she observes the lifeless burned trees and resents the ugly clear cuts.

81. Every time Daniel Schurg sees or hears a fire truck, firefighter, USFS vehicle, Sheriff patrol car or officer he is reminded of that chaotic and fearful day and relives the events and emotions he experienced over again. Daniel Schurg's hands begin to sweat, he can feel his heart start to pound, he becomes anxious and then anger overwhelms him.

82. Daniel Schurg often finds himself needing to be outside, alone and away from people in order to deal with the stress caused by the USFS firing operations that burned his property.

83. In days following the Fire and his return to work, Daniel Schurg found himself being barraged with questions that forced him to relive the experience time and time again along with the severe emotions.

84. For quite some time after the Fire, Daniel Schurg isolated himself in order to protect himself from these types of interaction with people. This created a strain on his job as a public servant where he functions as an EMT/Safety and Security Officer.

## Count 3 – Intentional Trespass

85. Plaintiffs reallege and incorporate all prior paragraphs here as if fully restated in this Claim for Relief.

86. The USFS lit the fires that entered Plaintiff's land.

87. The fires lit by the USFS destroyed Plaintiffs' personal and real property.

## Count 4 – Negligent Trespass

88. Plaintiffs reallege and incorporate all prior paragraphs here as if fully restated in this Claim for Relief.

89. The USFS recklessly or negligently, and as a result of an abnormally dangerous activity, lit fires that entered Plaintiffs' land.

90. The fires lit by the USFS destroyed Plaintiffs' real and personal property and caused them severe emotional distress.

91. The USFS conduct described above interfered with Plaintiffs' use and enjoyment of their land which caused them severe mental anguish and caused them discomfort and annoyance.

## Count 5 – Conversion

92. Plaintiffs reallege and incorporate all prior paragraphs here as if fully restated in this Claim for Relief.

93. The USFS' firing operations destroyed Plaintiffs' personal property and denied them their right of ownership of said personal property.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for damages, relief and judgment against the USFS as follows:

1. Compensatory damages to be proven at the time of trial, including but not limited to the reasonable costs of medical care and psychological care Plaintiffs will continue to incur;

2. For physical pain and suffering;

3. Loss of quiet enjoyment of her property and enjoyment of life;

4. For emotional distress;

5. For restorative damages;

6. For special damages;

DATED this 11th day of May, 2020.

                                              KRIS A. MCLEAN LAW FIRM, PLLC

                                              <u>/s/ Kris A. McLean</u>
                                              Kris A. McLean
                                              Attorney for Plaintiff